(107 So. 94)

### COPELAND v. WARREN. (6 Div. 514.)

(Supreme Court of Alabama. Jan. 14, 1926.)

**1. Reformation of instruments ⬥33—Present owner and his original grantor held proper parties, in bill for reformation of conveyance of land.**

In suit to reform conveyances of land, because of mutual mistake, present owner and his original grantor, the grantee in complainant's conveyance, were proper parties respondent, regardless of fact that such grantee of complainant had, at time of suit, no interest in land.

**2. Reformation of instruments ⬥33—Persons having legal title must be made parties to suit to reform conveyance of land.**

In suit to reform conveyance of land, persons having legal title to it must be made parties.

**3. Reformation of instruments ⬥28 — That several conveyances in line are to be corrected held no objection to reformation.**

Fact that several conveyances in line of title are to be corrected is no objection to reformation of instrument conveying land.

**4. Reformation of instruments ⬥44—Declaration of parties in possession held competent evidence.**

In suit to reform conveyances of land, declaration of parties in possession are competent as tending to show their interpretations of latent ambiguities in contracts and conveyances, and to illustrate whether their possession is adverse.

**5. Equity ⬥57 — Equity will give effect to transaction by fixing status and rights of parties as if deed were executed on date it should have been executed.**

Equity treats as done that which should have been done to carry into effect intention of parties, and, in suit to reform conveyance of land, will give effect to transaction by fixing status and rights of parties as if it were executed on date it should have been executed.

**6. Notice ⬥6—Actual possession of land held sufficient notice to put any one dealing therewith on inquiry.**

Actual possession of land is implied notice of nature of title, under which it is being maintained, sufficient to put on inquiry any one dealing therewith.

**7. Adverse possession ⬥66(1)—Statute, prescribing rule of adverse possession, held not to apply to disputed boundary line.**

Code, 1923, § 6069, prescribing rule of adverse possession, does not apply to disputed boundary line, in suit to reform conveyances of land.

**8. Reformation of instruments ⬥45(5)—Evidence held to require reformation of deed to correspond to boundary intended by parties.**

In suit to reform deeds for mutual mistake, evidence that second deed was given for purpose of correcting first; that parties intended thereby to convey only to fence, used as common boundary line, and grantor therein refused to execute second deed until given assurance that it would not affect his rights theretofore acquired; that they had recognized such boundary line for period of over 10 years, and of exercise of rights of absolute ownership by plaintiff, payment of taxes, etc., *held* to require reformation of deed to make boundary run with fence mentioned in deed.

**9. Reformation of instruments ⬥51—Reformation of conveyance held to relate back to original execution of conveyance made subject of mutual mistake.**

Reformation of conveyance relates back to original execution of conveyance made subject of mutual mistake.

─────

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Deeds ☞43—Equity will give effect to private conveyance attempting to correct mistake.**

Where parties correct mutual mistake by private conveyance, or do, or attempt to do, what court of equity would have done, equity will give effect thereto, according to correct description of land bought, sold, or divided by parties.

**11. Boundaries ☞46(1) — Purchase and possession of land east of fence held to place in purchasers equitable title thereto, empowering them to agree with vendor as to boundary line.**

Where parties purchased land east of fence described as boundary in deed, were placed in possession thereof, and executed mortgage to secure payment of purchase money, although first deed did not describe such land accurately in all respects, it vested equitable title in purchasers, which dominated legal title and gave their vendor right to specific performance of the contract, giving the purchasers an interest empowering them to agree with their vendor as to the boundary line.

**12. Adverse possession ☞66(1)—If adjacent landowners agree on dividing line, and occupy up to it, or build fence thereon, and claim to fence, such possession is hostile and adverse to other party.**

Where respective owners of adjacent lands agree on dividing line, and occupy up to it, or one builds fence on dividing line, and claims to it, with knowledge of claim by other, such claim is presumptively hostile, and such possession is adverse, if so persisted in by adverse holder.

**13. Appeal and error ☞931(6)—Decree of trial court, sustained by some evidence, upheld on appeal, regardless of illegality of certain testimony.**

Where there was some evidence to sustain decree of trial court reforming deeds, under Code 1923, § 6565, Supreme Court will presume that trial court followed statute, and such decree will be upheld, regardless of assignment of error that trial court considered illegal testimony.

**14. Witnesses ☞144(6)—Vendor held competent witness as to sale of land for which deceased person paid consideration.**

In suit to reform deeds conveying land which complainant had sold to person since deceased, but title to which was taken in name of such person's wife, who had since conveyed land to another, vendor was competent witness, regardless of Code 1923, § 7721, prohibiting testimony as to transaction with deceased party, whose estate is interested in result of suit.

Appeal from Circuit Court, Blount County; O. A. Steele, Judge.

Bill in equity by L. P. Warren against R. C. Copeland. From a decree for complainant, respondent appeals. Affirmed.

R. C. Copeland filed suit in ejectment against L. P. Warren. On motion of defendant the cause was transferred to the equity side of the court, where defendant, complainant in equity, filed his bill, making Copeland and Sallie Ratliff parties respondent, alleging that complainant sold certain lands to Warren Ratliff, executing a deed thereto to Sallie Ratliff, wife of Warren Ratliff; that by mutual mistake the land intended to be conveyed was not correctly described; that thereafter complainant was advised by Ratliff that there was an error in description and requested that complainant execute a deed then presented purporting to correct the mistake; that said second deed which was executed by complainant contained, also, a mistake of description, mutual to the parties or due to an error of the scrivener, which fact was not known to complainant until shortly before this suit was filed; that thereafter, Warren Ratliff having died, Sallie Ratliff undertook to convey to Copeland the lands embraced in the later deed from Warren to Ratliff. It is prayed that the deeds executed by complainant to Ratliff be reformed or that the boundary line between the lands of the parties be settled and established. From the decree respondent Copeland appeals.

Russell & Johnson, of Oneonta, for appellant.

No person having a pecuniary interest in the suit may testify against the party to whom his interest is opposed as to any transaction with a deceased person whose estate is interested. Code 1923, § 7721; Guin v. Guin, 196 Ala. 221, 72 So. 74; Hodges v. Denny, 86 Ala. 228, 5 So. 492; Moore v. Walker, 124 Ala. 199, 26 So. 984; Jernigan v. Gibbs, 206 Ala. 94, 89 So. 196. Before reformation will be awarded, it must appear there was a valid agreement of the parties expressing their real intent, and that the instrument failed to express the real intent due to mutual mistake. Stay v. Tennile, 159 Ala. 514, 49 So. 238; Hinton v. Ins. Co., 63 Ala. 488; Hertzler v. Stevens, 119 Ala. 333, 24 So. 521; 2 Pomeroy, 1755; 5 Pomeroy, 4739. As between the parties, the description of the property should be construed against the grantor. 18 C. J. 279; L. E. & W. v. Whitham, 155 Ill. 514, 40 N. E. 1014, 28 L. R. A. 612, 46 Am. St. Rep. 355; Hornet v. Dumbeck, 39 Ind. App. 482, 78 N. E. 691; Clute v. New York Cent. & H. R. R. Co., 120 N. Y. 267, 24 N. E. 317. There can be no adverse possession of lands, where one party holds the possession and the title. 2 C. J. 50; 1 Bouvier's Law Dict.; 1 R. C. L. 685; 1 Michie's Ala. Dig. 147.

Brown & Bland, of Cullman, for appellee.

Section 6069 of the Code of 1923 does not apply to suits involving disputed boundary lines between coterminous proprietors. Byars v. Howell, 209 Ala. 191, 95 So. 871. When coterminous owners agree on a dividing line, the possession of each is adverse to the other, and the line so recognized becomes the

legal boundary line. Hess v. Rudder, 117 Ala. 525, 23 So. 136, 67 Am. St. Rep. 182; Davis v. Caldwell, 107 Ala. 526, 18 So. 103; Taylor v. Fromby, 116 Ala. 621, 22 So. 910, 67 Am. St. Rep. 149; Hoffman v. White, 90 Ala. 354, 7 So. 816; Gunn v. Parsons, 213 Ala. 217, 104 So. 390; Ford v. Bradford, 212 Ala. App. 515, 103 So. 549. As to proof of such boundaries, see Chambless v. Jones, 196 Ala. 175, 71 So. 987; 9 C. J. 232; Taylor v. Fomby, supra. The second deed related back to the first. Hughes, etc., v. Carr, 203 Ala. 469, 83 So. 472; Hawkins v. Pearson, 96 Ala. 375, 11 So. 304; Chapman v. Fields, 70 Ala. 403; 23 R. C. L. 372. Actual possession is notice sufficient to put one on inquiry. Seeberg v. Norville, 204 Ala. 20, 85 So. 505; Alexander v. Fountain, 195 Ala. 3, 70 So. 669. Equity will go back through a line of conveyances and reform them, so as to make them speak the truth. Jackson v. Lucas, 157 Ala. 51, 47 So. 224, 131 Am. St. Rep. 17; 23 R. C. L. 339; Johnson v. Sandlin, 209 Ala. 430, 96 So. 223. Where parties do by private conveyance what equity would do for them, the court will give effect to their acts. Grace v. Montgomery, 207 Ala. 189, 92 So. 412; Dennis v. McEntire, 187 Ala. 314, 65 So. 774; Milnes v. Van Gilder, 197 Pa. 347, 47 A. 197, 80 Am. St. Rep. 828.

THOMAS, J. The action at law was duly transferred to the equity docket, and the pleadings were shaped accordingly. Stover v. Hill, 208 Ala. 575, 94 So. 826.

[1, 2] The bill sought reformation of a conveyance of land because of mutual mistake so as to describe the lands sold to defendant's grantor, and the establishment of a division line. The present owner and his original grantor, the grantee in complainant's conveyance, are proper parties respondent. The persons having the legal title to the subject-matter must be made parties to such a bill. Hodge v. Joy, 207 Ala. 198, 92 So. 171.

Courts of equity are given jurisdiction to establish disputed boundary lines between coterminous owners, and to settle adverse claims to the end contemplated by the statute. Code 1923, § 6440 et seq.

[3] The questions of mutual mistake and misapprehension of the parties, and the misapprehension of the scrivener, were recently considered and the authorities collected in Parra v. Cooper (Ala. Sup.) 104 So. 827,[1] which considerations need not now be repeated. See Houston v. Faul, 86 Ala. 232, 5 So. 433. It is no objection to reformation that several conveyances in the line are to be corrected. Jackson v. Lucas, 157 Ala. 51, 47 So. 224, 131 Am. St. Rep. 17; Bagley v. Bagley, 206 Ala. 232, 89 So. 739; Stover v. Hill, 208 Ala. 575, 579, 94 So. 826.

The authorities are collected as to the nature and character of the possession where a dividing line is established by agreement and acquiescence, and the effect of holding real property to such line, acquiesced in by the respective owners, in Hodges v. Sanderson (Ala. Sup.) 105 So. 652;[2] Gunn v. Parsons (Ala. Sup.) 104 So. 391;[3] Smith v. Bachus, 201 Ala. 534, 78 So. 888; Id., 195 Ala. 8, 70 So. 261. And the subject of latent and patent ambiguities in conveyances is adverted to in Aiken v. McMillan, 213 Ala. 494, 106 So. 150.

The deed dated December 7, 1915, from Warren and wife to Mrs. Ratliff, recognizes the fence in question as the line accepted and acquiesced in by that grantee. The language employed by the scrivener, among other things, is:

"Thence with the fence, or on top of ridge in a southeast direction, to the southeast corner of said 80; thence north to beginning point."

[4] When this latent ambiguity is illustrated by the evidence, the fence referred to is that theretofore erected by Ratliff and Warren as the boundary of their respective lands, built in the spring of 1908. Aiken v. McMillan, supra. The testimony of the scrivener, Hearn, Mrs. Warren and B. F. Warren, Jones, the Nations, Henry Warren, Vernon Ratliff et al., is to this effect. The declarations of the parties in possession are competent as tending to show their interpretations of latent ambiguities in contracts and conveyances, and to illustrate the nature of their possession of real property, whether or not it is adverse. Snodgrass v. Snodgrass, 212 Ala. 74, 101 So. 837; Aiken v. McMillan, supra; Smith v. Bachus, 195 Ala. 8, 70 So. 261; Gunn v. Parsons, supra.

In addition to the admission of Copeland that he had read the deed employing the fence as a part of the description before he purchased the land, there was a subsequent deed made that sought to remedy defects in the description in conformity with the agreement of the parties, and there was evidence tending to show that the possession of the tract to the time in question was open, notorious, continuous, hostile, and adverse to Ratliff; that is to say, from the erection of the fence in 1908 to the date of Ratliff's death in 1918, and thereafter until and after Copeland made his antagonistic claim to the strip of land in question, the holding was adverse as against all the world. Aiken v. McMillan (Ala. Sup.) 106 So. 150.[4] The sale by complainant to Warren Ratliff was in 1907. The dividing line was indicated and marked by the fence in 1908, and maintained by the respective parties until the time the litigation arose, or for a period of more than 10 years.

[5-7] A court of equity treats as done that which ought to have been done to carry into effect the intention of the parties, and to that end will give effect to the transaction by fix-

[1] 213 Ala. 340.                    [2] 213 Ala. 563.        [3] 213 Ala. 217.    [4] 213 Ala. 494.

ing the status and rights of the parties as if the deed was executed on the date it should have been executed, etc. Hughes & Tidwell Supply Co. v. Carr, 203 Ala. 469, 471, 83 So. 472. The fact of intervening conveyances, with notice, is no obstacle to reformation. Stover v. Hill, 208 Ala. 575, 94 So. 826. And actual possession of land is implied notice and sufficient to put on inquiry any one dealing therewith, and is notice of the nature of title under which the same is being maintained. Seeberg v. Norville, 204 Ala. 20, 85 So. 505; Alexander v. Fountain, 195 Ala. 3, 70 So. 669; Gamble v. Black Warrior Coal Co., 172 Ala. 672, 55 So. 190; McCarthy v. Nicrosi, 72 Ala. 332, 47 Am. Rep. 418; Brunson v. Brooks, 68 Ala. 251; Daniel v. Sorrells, 9 Ala. 440; Scroggins v. McDougald, 8 Ala. 382; Fenno v. Sayre & Converse, 3 Ala. 458, 470. In Byars v. Howell, 209 Ala. 191, 95 So. 871, it was declared that, in a suit involving (as this did) a question as to the true boundary line between coterminous landowners, section 2830 of the Code of 1907 (section 6069 of the Code of 1923), prescribing the rule of adverse possession, does not apply to disputed boundary lines. Sanderson v. Hodges, 209 Ala. 635, 96 So. 871; Id., 213 Ala. 563, 105 So. 652.

[8] The evidence supports the conclusion that the deed in 1915 was intended to correct the misdescription in the former deed; that the interests of Ratliff were looked after by Warren Ratliff, who procured the execution of that deed, under the assurance that the grantors' rights to and possession of the land as held by them would not be disturbed. Under such undisputed fact, together with that of his purchase of a designated tract, the long-continued and adverse possession, and the exercise of acts of absolute ownership, assessing the same for taxes, etc., it would be inequitable to deprive Warren of the rights he had theretofore acquired by his purchase, the agreement of the parties, and adverse possession.

[9, 10] The reformation of a conveyance relates back to the original execution of the conveyance made the subject of the mutual mistake. Hughes & Tidwell Supply Co. v. Carr, 203 Ala. 469, 83 So. 472; Hawkins v. Pearson, 96 Ala. 369, 375, 11 So. 304; Chapman v. Fields, 70 Ala. 403. In a case where the parties correct a mutual mistake by a private conveyance, or do or attempt to do what a court of equity would have done, a court of equity will give effect to the same in a due procedure to the end sought—a correct description of the land bought, sold, and divided by the parties. This is illustrated where the parties to a mortgage effectuate a foreclosure by an appropriate conveyance reserving a right the equivalent of the statutory right of redemption, or right to repurchase, analogous thereto. The title relates back to the execution of the mortgage, and the conveyance in lieu of foreclosure will be given the effect of a foreclosure in equity. McAllister v. Catchings, 210 Ala. 392, 98 So. 303; Dinkins v. Latham, 202 Ala. 101, 79 So. 493; Farrow v. Sturdivant Bank, 184 Ala. 208, 63 So. 973; Rothschild v. Bay City Lbr. Co., 139 Ala. 571, 36 So. 785; Stoutz v. Rouse, 84 Ala. 309, 4 So. 170; Grace v. Montgomery, 209 Ala. 386, 96 So. 430; Dennis v. McEntire Merc. Co., 187 Ala. 314, 65 So. 774.

When Ratliff approached Warren in 1915 relative to the execution of the deed purporting to correct the deed of 1907, the latter declined to execute the same until Ratliff assured him, and so agreed, that his acquired right to the land or tract which he was in possession of would in no way be disturbed. After its execution, under the evidence of Jones, a former tenant of Ratliff in possession of his lands on the other side of the fence, in the year 1917–18 Ratliff recognized the fence as the true line and instructed Jones to cut timber only east of the fence. Gunn v. Parsons (Ala. Sup.) 104 So. 390.[5] That is, the undisputed evidence shows that Ratliff and his wife, after the execution of the deed of 1915, made no claim and asserted no right to the land beyond the line fence. And no other person has questioned this line, save Ratliff's grantee, Copeland, long after Mrs. Ratliff had conveyed to him. According to his evidence, Copeland thought the fence was the line, and purchased the land with that assumption of fact. It would work hardship and injustice to Warren (Ratliff being dead and his testimony not available) to give effect to this deed contrary to the intention of the parties in executing it.

In Milnes v. Van Gilder, 197 Pa. 347, 350, 47 A. 197, 198, 80 Am. St. Rep. 828, 829, it is said:

" * * * A vendor, refusing possession to his vendee, has, or imagines he has, good cause for his refusal, and is not required to become the actor in any proceeding for the annulment of his deed. He need only defy his vendee's right to possession by distinctly refusing it when demanded, and if, then, he is not disturbed for 21 years, at the expiration of that period the statute protects him, no less than a stranger to the title, if he can establish the kind of possession required by the law in the interval. This ought to be so, and a dilatory vendee ought not to complain of it. By his delay proof of what was the reason for his vendor's refusal to deliver possession may become impossible. Witnesses may disappear, papers may be lost, or, as in the cases before us, the death of a vendee in a suit by his heirs may seal the vendor's lips, which might be able to tell why possession was refused long before when demanded."

This is the reason on which our cases rest. Wooddy v. Matthews, 194 Ala. 390, 401, 69 So. 607; Rives v. Morris, 108 Ala. 527, 18 So.

---

[5] 213 Ala. 217.

743; Hauser v. Foley & Co., 190 Ala. 437, 67 So. 252.

[11] The refusal to execute the deed until Ratliff agreed with Warren that his rights theretofore acquired would in no way be affected was a hostile act in respect to the latter's possession of the land west or beyond the line fence. This act, coupled with his previous hostile possession from and to the fence line since the year 1907, continuing uninterruptedly until this suit was filed, and embracing a period of more than 10 years—about 16 years—under the authorities entitled Warren to have the deed reformed and the line established "running with the fence on top of the ridge," etc. Aiken v. McMillan, supra. This follows from the undisputed evidence showing that the Ratliffs purchased and were placed in possession of the land lying east of the fence line, and on which they executed a mortgage to secure the payment of the purchase money. The effect of the purchase and possession, though the first deed did not describe the land in all respects of which they were placed in possession, was to vest in Ratliff, under the agreement of the parties, the equitable title to the land east of the fence; and this equitable title in this proceeding will dominate the legal title and entitle Warren to a specific performance of the contract, giving the Ratliffs such interest as empowered them to agree with Warren on the line between said coterminous owners of the land. Fields v. Karter, 121 Ala. 329, 25 So. 800; Metcalf v. Clemmons-Powers & Co., 200 Ala. 243, 76 So. 9. At the risk of repetition, we may say it is shown by the evidence that the case involves the question of boundaries between coterminous landowners, and in such cases section 2830 of the Code of 1907 (section 6069, Code 1923), prescribing the elements of adverse possession, has no application. Byars v. Howell, 209 Ala. 191, 95 So. 871.

[12] However, it is settled in this jurisdiction that where the respective owners of adjacent lands agree upon a line as their dividing line, and occupy up to it, or where one of them builds a fence as the dividing line, and occupies and claims to it as such, with the knowledge of such claim by the other, the claim is presumptively hostile and the possession adverse, if so persisted in by the adverse holder. Hess v. Rudder, 117 Ala. 528, 23 So. 136, 67 Am. St. Rep. 182; Brown v. Cockerell, 33 Ala. 38; Alexander v. Wheeler, 69 Ala. 340; Hoffman v. White, 90 Ala. 354, 7 So. 816; Davis v. Caldwell, 107 Ala. 526, 18 So. 103; Smith v. Bachus, 201 Ala. 534, 78 So. 888; Taylor v. Fomby, 116 Ala. 626, 22 So. 910, 67 Am. St. Rep. 149; McLester Bldg. Co. v. Upchurch; 180 Ala. 26, 60 So. 173. Appellant cites Oliver v. Oliver, 187 Ala. 340,

65 So. 373, as opposed to this rule. This court in Smith v. Bachus, 195 Ala. 8, 18, 70 So. 261, 266, after stating the rule as above, from Taylor v. Fomby, 116 Ala. 621, 22 So. 910, 67 Am. St. Rep. 149, said:

"This is not in conflict with the rule declared in Oliver v. Oliver, 187 Ala. 340, 65 So. 373."

[13] Assignment of error is predicated upon the assumption that the trial court considered illegal testimony in reaching the conclusions expressed in the final decree. There is evidence to sustain the decree, aside from the depositions of complainant, L. P. Warren. And, in view of the provision of section 6565 of the Code of 1923, the reviewing court will presume that the trial court followed the statute. Moore v. Moore, 212 Ala. 685, 103 So. 892; Cotton v. Cotton, 213 Ala. 336, 104 So. 650; Mason v. Calhoun, 213 Ala. 491, 105 So. 643.

[14] The undisputed evidence shows that the sale of the land in question was by the complainant, Warren, to his uncle, Warren Ratliff; that Ratliff was not acting for his wife as an agent in the purchase and division, but was acting for himself. After the trade had been closed, because of Ratliff's financial condition the deed was made by Warren, at the request of the husband, to Ratliff's wife. Mrs. Ratliff admitted that she had no money to buy, and that her husband bought this land and put the title in her, and that the possession was taken and maintained uninterruptedly. Ratliff's estate is in no way interested in the result of this suit or proceeding. Mrs. Ratliff has now no interest, but was properly made a party respondent because of the fact that she is one of the original parties to the deed and other conveyances. Under these facts, Warren is a competent witness. The statute provides:

"No person having a pecuniary interest in the result of the suit or proceeding shall be allowed to testify against the party to whom his interest is opposed, as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or proceeding, or when such deceased person, at the time of such transaction or statement, acted in any representative or fiduciary relation whatsoever to the party against whom such testimony is sought to be introduced." Code 1923, § 7721; Moore v. Moore, supra; Bush v. Bumgardner, 212 Ala. 456, 102 So. 629; Phillips v. Morris, 169 Ala. 460, 53 So. 1001; Morris v. Bank, 93 Ala. 511, 9 So. 606.

There was no error in the decree, and the same is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.